# IN RE PAYMENT PERSONAL PROPERTY TAXES.

## STATE v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 5, 1918.

No. 20,386.

**Railway — gross earnings tax — collection of ad valorem tax — practical construction by state officers.**

In a proceeding to enforce personal property taxes against the defendant railway company it is *held*:

(1) That certain securities sought to be subjected to an ad valorem tax were owned and used for railway purposes within the gross earnings statute, that they paid a tax when the company paid its gross earnings tax, and that they were not subject to an ad valorem tax.

(2) That certain other securities, such as stocks and bonds or other indebtedness of corporations, though legitimately acquired and advantageously held by the company in connection with its railway operations, were not owned or used for railway purposes within the meaning of the gross earnings statute, and were subject to an ad valorem tax.

(3) The securities mentioned in the preceding paragraph have a taxable situs in Minnesota, under the laws of which the defendant is incorporated and in which it has its principal office and place of business and its principal operating and traffic offices, though it has a financial office in New York where it transacts some of its business and though it keeps the securities in New York.

(4) There has been no practical construction by the administrative officers of the state which prevents the taxation of such property now though not taxed heretofore.

[1]Reported in 167 N. W. 297.

In proceedings in the district court for Ramsey county to enforce payment of personal property taxes remaining delinquent and unpaid on April 1, 1916, defendant interposed an answer which alleged that certain specified bonds and stocks held by it and certain moneys advanced by it to specified railway and other companies, all of which were assessed as taxable on May 1, 1915, constituted property which defendant owned or operated for railway purposes, upon which it paid to the state of Minnesota for the year 1915 a gross earnings tax of over one million dollars— the same being 5 per cent of its gross earnings derived from the operation of its railway system within the state—and that tax was imposed in lieu of all other taxes upon defendant's property in accordance with Laws 1912, c. 9. The matter was tried before Michael, J., who made findings and ordered judgment in favor of plaintiff for $19,284.89 as taxes on property specifically mentioned in the findings, and in favor of defendant cancelling the levy of taxes against all other property not specifically mentioned. Plaintiff's motion for amended findings and conclusions or for a new trial was denied. Defendant's motion for amended findings and conclusions or for a new trial was denied. From that part of the judgment unfavorable to it, entered pursuant to the order for judgment, each party appealed. Affirmed on both appeals.

*Lyndon A. Smith,* Attorney General, *Egbert S. Oakley,* Assistant Attorney General, *Richard D. O'Brien,* County Attorney, and *Patrick J. Ryan,* Assistant County Attorney, for appellant.

*Cordenio A. Severance* and *Erasmus C. Lindley,* for respondent.

DIBELL, C.

This is a proceeding against the Great Northern Railway Company to enforce personal property taxes delinquent in Ramsey county. There were findings and judgment determining that certain personal property of the defendant was and other was not subject to ad valorem taxation. The state and the defendant both appeal.

1. The defendant owns stocks, bonds and other corporate indebtedness which the court found constituted property owned and used for railway purposes and not subject to an ad valorem tax. Some of these pieces of property are the same and all are of the same character as that involved in State v. Northern Pacific Ry. Co. infra, page 473, 167 N. W. 294.

That case is controlling. The trial court's holding that it was not subject to an ad valorem tax is sustained.

. 2. In addition to such securities the defendant owns others which the court held not owned or used for railway purposes within the meaning of the gross earnings statute and therefore subject to an ad valorem tax. It owns stock in a number of townsite companies in Montana and Washington and has made advances to some of them. It owns stock in a coal mine in British Columbia. This was acquired in part to secure a supply of coal for the future and in part to get traffic for the road. It owns the stock of the Somers Lumber Company, a Minnesota corporation having its holdings chiefly in Montana. It acquired the stock for the purpose of insuring a future supply of ties. It made a loan to the company. It is sought to tax the loan but not the stock. It owns bonds of the Northern Land Company which owns the quarries at Sandstone from which it gets traffic. It owns stock in an electric company having a power plant in Washington. It is in prospect that the plant will be developed and the power used in the electrification of the defendant's road. It owns the bonds of a hotel company in Spokane; bonds of an irrigation district in Washington; bonds of a land company; bonds of a city in Washington received in payment for property sold; bonds of the Wisconsin Central Railway Company received in exchange for terminal property, and bonds of the Pillsbury-Washburn Company which it took years ago in payment of freight earned, which the company was unable to pay at the time. The court found that the bonds of the Pillsbury-Washburn Company had been held unreasonably long and had ceased to be working capital and had become an investment.

It is clear that property of the general character indicated, though acquired properly and in the exercise of good business judgment, is not owned or used for railway purposes within the principle of our holdings. County of Todd v. St. Paul, M. & M. Ry. Co. 38 Minn. 163, 36 N. W. 109 (timber lands held for tie and lumber supply not exempt) ; County of Hennepin v. St. Paul, M. & M. Ry. Co. 42 Minn. 238, 44 N. W. 63 (hotel owned by company and kept by its lessee as a summer resort not exempt though it contributed to travel on road) ; County of St. Louis v. St. Paul & D. R. Co. 45 Minn. 510, 48 N. W. 334 (wharf leased to coal company not exempt). Though legitimately acquired and advantageously held in

aid of railway operation, or to attract or develop business, it is not property owned or operated for railway purposes within the gross earnings statute. G. S. 1913, § 2226.

The defendant claims, however, that having succeeded to the charter of the Minneapolis & St. Cloud Railroad Company which was created by a special legislative act of the territory of Minnesota, approved March 1, 1856, it is relieved from ad valorem taxation. Laws 1856, p. 294, c. 160. The exemption claimed is founded on Special Laws 1870, p. 308, c. 52; which provides that in consideration of the payment of a gross earnings tax "the road, its appurtenances and appendages, and all other property, estate and effects * * * which they have already acquired or which they may hereafter acquire, purchase, hold, possess, enjoy, or use for, in or about the construction, equipment, renewal, repair, maintaining or operating its railroad, as also the stock and capital of said company, shall be and hereby are forever exempt from all assessments and taxation." Importance is attached to the words "stock and capital." The state for reasons which we need not discuss claims that the defendant has now no special charter exemption but is governed by the general statute. Conceding that the special charter is still effective we are unable to construe the act as more extensive in application than the general statute providing for the gross earnings tax, or than the provisions of various special charters granted from time to time.

We hold that the property was rightly found by the court to be nonrailway in character and subject to an ad valorem tax.

3. The defendant is a Minnesota corporation and has its principal office and place of business and its principal operating and traffic office in St. Paul. It maintains an office in New York "where," as the court finds, "a considerale portion of its financial affairs have been directed and transacted." It keeps the evidence of at least a part of its intangible property here involved in New York.

The property under consideration has a taxable situs in Minnesota. It is intangible. The presence of the evidences of it in New York does not prevent its taxation in the state of the domicile of the corporate owner where also the general offices are. See Board v. Hewitt, 76 Kan. 816, 98 Pac. 181, 14 L. R. A. (N.S.) 493; In re Estate of Fair, 128 Cal. 607; 61 Pac. 184; Central R. Co. v. Wright, 124 Ga. 630, 53 S. E.

207; Central R. Co. v. Wright, 166 Fed. 153; Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. 712, 51 L. ed. 1106, 11 Ann. Cas. 732.

4. The court finds that at no time in the past have the administrative officers of the state sought to list property of the character here involved, though the ownership of it has been regularly reported to the Railroad and Warehouse Commission, and that such property has never been assessed. From these facts the defendant argues that there has been a practical construction determinative of taxability. The finding relates to all classes of securities, railway which we hold not subject to an ad valorem tax as well as nonrailway which have no exemption. So far as the securities were railway the officers were right in not taxing. Their omission was in respect of the nonrailway and perhaps in failing to distinguish. In our judgment there has been no such practical construction as prevents taxation. See State v. Northwestern Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534.

The trial court was right in its determination as to all the property involved.

Judgment affirmed on both appeals.

BUNN, J., took no part.